IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| FOSTER O. MCDONALD, as Personal Representative of the Estate of Sidney L McDonald, deceased<br><br>  Plaintiff,<br><br>v.<br><br>NIXON ENERGY SOLUTIONS; GREEN ENERGY SOLUTIONS, INC., ARBORONE ACA,<br><br>  Defendants.<br>_____<br><br>NIXON ENERGY SOLUTIONS,<br><br>  Cross-Claim Plaintiff,<br><br>v.<br><br>ARBORONE, ACA,<br><br>  Cross-Claim Defendant.<br>_____ | Civil Action No.: 4:14-CV-02589-RBH<br><br>**ORDER** |

  Cross-Claim Defendant ArborOne, ACA ("ArborOne") filed a Motion for Judgment on the Pleadings or for Summary Judgment on the cross-claims brought by Nixon Energy Solutions on December 28, 2016. [ECF #113-1]. On January 11, 2017, Plaintiff filed a response to and joinder in ArborOne's Motion, explaining that both the fraudulent transfer and intentional interference with contractual relations cross-claims that are the subject of this motion are based upon the same contentions by Nixon Energy Solutions in its counterclaims against Plaintiff. [ECF #115]. Plaintiff

requested this Court render summary judgment in favor of Plaintiff on Nixon Energy Solutions's counterclaims against Plaintiff, as well. On January 23, 2017, Nixon Energy Solutions ("Nixon") filed its response in opposition to Defendant's Motion. [ECF 117]. Defendant filed its reply in support of its motion on January 30, 2017. [ECF #120]. This Court has considered all of the pleadings filed in this case, and this matter is now before the Court for review[1].

## Standards of Review

ArborOne brings this motion as one for judgment on the pleadings, or in the alternative, for summary judgment. Under Rule 12 of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings after the pleadings are closed, but early enough so as not to delay trial. Fed. R. Civ. P. 12(c). A party may seek judgment in its favor on certain claims on the ground that none of the claims, here the cross-claims, state a claim upon which relief may be granted. Fed. R. Civ. P. 12(h)(2)(B). When ruling on a motion under Rule 12, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In considering such a motion, the factual allegations in a complaint are accepted as true, and the plaintiff is afforded the benefit of all reasonable inferences to be drawn from the allegations contained within the complaint. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In considering motions made pursuant to Rule 12(c), Courts follow a restrictive standard to avoid "hasty or imprudent use" of the procedure. *Fitzhenry v. Independent Order of Foresters*, No. 2:14-cv-3690, 2015 WL 3711287, at *1 (D.S.C. June 15, 2015).

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986))**.**

In this case, Defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 845 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If Defendant carries this burden, "the burden then shifts to the non-moving party to come forward with fact sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there

is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. *See id*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)). The nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989). The parties have had the opportunity to conduct discovery in this case. This Court will analyze this Motion under the applicable standard for summary judgment.

## Factual Background and Procedural History

On or about December 17, 2010, ArborOne made a loan in the amount of $300,000.00 to provide necessary funds to James Lamar Collins and Cynthia W. Collins to enable their business associate, Green Energy Solutions, Inc. to commence work on the construction of a biogas facility. Nixon was an entity which furnished materials for the construction of the facility pursuant to a contract with Green Energy Solutions, Inc. [ECF #113-1, p. 2]. Nixon furnished said materials on credit and on an unsecured basis, except to the extent of its rights under South Carolina law to assert a mechanic's lien. [ECF #113-1, p. 2]. Defendant states that Mr. and Mrs. Collins represented to ArborOne that commencement of this project would enable Green Energy Solutions, Inc. ("GES"), to qualify for a grant from the U.S. Department of the Treasury under Section 1603

4

of Division B of the American Recovery and Reinvestment Act of 2009 ("Section 1603"). This loan was apparently evidenced by a Nonrevolving Variable Rate Note, dated December 17, 2010, in the principal amount of $300,000.00, payable to the order of ArborOne, and signed by Mr. and Mrs. Collins (the "Initial ArborOne Note"). [ECF #113-2, Ex. A]. GES guaranteed the payment of the Initial ArborOne Note by signing a Continuing Guaranty, dated December 17, 2010. [ECF #113-2, Ex. A, Declaration of Mr. Richard Pitts].

Thereafter, ArborOne states that it made additional loans for the construction of the biogas facility at the request of Mr. and Mrs. Collins and in reliance upon the Continuing Guaranty. These additional loans were evidenced by new promissory notes, modifications of earlier promissory notes, or new notes that evidenced both new loans and a refinancing of earlier loans. [ECF #113-2, Ex. A]. Then, on June 27, 2011, Mr. and Mrs. Collins executed a Nonrevolving Variable Rate Note in the principal amount of $2,165,000.00, with a final maturity date of March 1, 2012 (the "ArborOne Note"). Proceeds from this, and other, loans were used to pay contractors, such as Nixon, who supplied materials for the biogas facility. [ECF #113-1, p. 2].

ArborOne also states that Mr. and Mrs. Collins and GES signed and delivered a Security Agreement dated June 27, 2011 and created in favor of ArborOne to induce ArborOne to make available the loan amount of $2,165,000.00, which included the additional $567,037.70, for the construction of the biogas facility. [ECF #113-2, Ex. A]. This document reflects a security interest on behalf of ArborOne in all respective "general intangibles" as defined by the South Carolina Uniform Commercial Code (the "UCC") as revised and effective as of July 1, 2001, and "rights to payment, now or hereafter owing, to the Debtor from entitlement programs of every kind, both

5

federal and state." This is ArborOne's basis for proving it has a security interest in the Section 1603 Program grant funds that are the subject of Nixon's cross claims. Nixon does not allege that on June 27, 2011, the date of the execution of the Security Agreement that GES was insolvent.

According to ArborOne, on March 1, 2012, Mr. and Mrs. Collins and GES became unable to pay ArborOne pursuant to the ArborOne Note. Meanwhile, on April 25, 2013, Nixon filed a mechanic's lien against the property. Thereafter, on or around May 14, 2013, ArborOne filed a UCC-1 financing statement with the Secretary of State of Nevada, thereby "perfecting" its existing Security Agreement. [ECF #113-2, Ex. A].[2] Although ArborOne had a valid Security Agreement on any payments due GES from federal programs, the Security Agreement was not "perfected" until after GES and Mr. and Mrs. Collins became unable to pay the loan. GES completed its application for a grant under the Section 1603 Program, and after using those proceeds to satisfy the ArborOne Note, a balance was left owing on the ArborOne Note in the amount of $112,356.18. For its part, Defendant Nixon asserts that GES failed to pay $79,172.90 under its contract with Nixon to supply a generator for the biogas facility. For this reason, Nixon filed a mechanic's lien on April 25, 2013 against the property and on June 5, 2013, filed a lis pendens and a lawsuit seeking to foreclose on this lien. However, Mr. and Mrs. Collins and GES's indebtedness to Nixon did not arise until sometime after the execution of the Security Agreement.

ArborOne does not dispute that Nixon was among the contractors and/or subcontractors

---

[2] ArborOne had a "secured" interest in the Section 1603 Program proceeds. Nixon does not assert that it has a security interest or a Security Agreement in the Section 1603 Program proceeds.

6

who provided labor and materials for the biogas facility. However, ArborOne submits that it disbursed to Nixon the amount of $692,811.10 of the proceeds of the loan, leaving behind an unpaid balance of $79,192.90 (an amount ArborOne does not dispute for purposes of this Motion). Nixon is now seeking to collect as a creditor of GES, by virtue of a cross-claim against ArborOne and counterclaims against Plaintiff, to recover its unpaid balance, on a theory of fraudulent conveyance and tortious interference with contract. Nixon argues that ArborOne wrongfully diverted payment of the grant money under the Section 1603 Program to its account, despite not having produced a Notice of Assignment.[3]

ArborOne now seeks judgment on the pleadings, or in the alternative summary judgment on these claims, as ArborOne argues that Nixon fails to prove as a matter of law that it was involved in a fraudulent conveyance or tortiously interfered with Nixon's contract with GES. Nixon has also asserted similar claims against Plaintiff Foster O. McDonald in the form of counterclaims. In Plaintiff's Joinder Motion, he requests summary judgment be granted on the counterclaims brought by Nixon against Plaintiff, as well.

## Discussion

### I. Nixon's Fraudulent Conveyance Claim

Under South Carolina law, any transfer made for the intent or purpose to delay, hinder, or defraud creditors is void. S.C. Code Ann. § 27-23-10. A transfer made for valuable consideration may be set aside only if (1) the transfer was made with actual intent to defraud a creditor; (2) the grantor was indebted at the time of transfer; (3) the grantor's intent is imputable to the grantee.

---

[3] *See* Page 10 of this Order regarding "Federal Assignment of Claims Act" and Nixon's argument.

7

*Durham v. Blackard*, 438 S.E.2d 259, 263, 313 S.C. 432 (S.C. Ct. App. 1993); *see also Future Group II v. Nationsbank*, 478 S.E.2d 45, 48-49, 324 S.C. 89 (S.C. 1996). However, where a transfer was not made on valuable consideration, the party bringing the fraudulent conveyance claim does not have to prove actual intent to hinder or delay the creditor; instead, the transfer will be set aside upon a showing that (1) the grantor was indebted to plaintiff at the time of the transfer; (3) it was a voluntary conveyance; and (3) the grantor did not retain sufficient property to pay the debt in full–not only at the time of the transfer but when the creditor seeks to collect upon the debt. *Blackard*, 438 S.E.2d at 262. Here, Nixon brings a cross-claim for fraudulent conveyance, alleging that GES improperly transferred money and property to ArborOne with the intent to wrongfully deprive payment to creditors, such as Nixon. Nixon further alleges that ArborOne was aware that GES owed money to Nixon, but despite this knowledge, GES and ArborOne diverted funds and assets intended to fund the biogas facility and in turn, pay GES's debt to Nixon. [ECF #16, pp. 6-7].

ArborOne argues that Nixon has simply pled the elements of the cause of action, without providing any factual details, such as the date of the transfer, the amount or type of transfer, or why the transfer should be deemed "improper." Thus, ArborOne argues that Nixon has failed to state a claim for relief and this Court should enter judgment on the pleadings in favor of Defendant. In the event this Court finds Plaintiff has stated a claim for relief, Defendant argues that summary judgment is appropriate as to this claim because this transfer was made "for good consideration" without the intent to defraud Nixon. A review of the record reveals that Nixon has attached to its response in opposition both an affidavit from a Nixon employee, as well as the

8

contract between Nixon and GES evidencing the agreement between these two entities. [ECF #117, Ex. 1; Ex. 2]. Furthermore, Nixon has argued in its brief that GES owes Nixon approximately $79,192.90 under the contract made January 27, 2011, and that ArborOne diverted funds owed to Nixon from GES. [ECF #117, pp. 1-2]. This Court finds that with this information before it, Nixon has pled sufficient facts, and the record contains additional evidentiary support such that ArborOne's motion for judgment on the pleadings based on the Plaintiff's alleged failure to state a claim is denied. Instead, this Court believes at this stage in the litigation, it is proper to consider this motion as one for summary judgment.

ArborOne argues that this Court should grant summary judgment in its favor on Nixon's cross-claim for fraudulent conveyance. The first inquiry is whether the transfer was made for valuable consideration. According to ArborOne, GES transferred a security interest in favor of ArborOne in property pursuant to the terms of the Security Agreement in order to induce ArborOne to make an additional amount of funds available for the construction of the biogas facility. ArborOne attached a copy of the Security Agreement, as well as the UCC-1 Financing Statement [ECF #113, Ex. 2, p. 25] to evidence its perfected security interest. Thus ArborOne met its initial burden of showing a proper conveyance as between these two entities.[4] While a security interest may be unperfected on a certain date, that does not affect the contractual obligations between the parties involved in the security interest. *CT& T EV Sales, Inc. v. 2AM*

---

[4] While neither party focuses on competing priority interests, this Court is mindful of the fact that perfecting a security interest is relevant with respect to priority of liens and to provide adequate notice to creditors. A security interest attaches to collateral when it becomes enforceable against the debtor. S.C. Code Ann. § 36-9-203. It is effective according to its term between the parties, against purchasers of the collateral and against creditors. S.C. Code Ann. § 36-9-201.

*Group, LLC*, No. 7:11-1532-TMC, 2012 WL 1576761, at *8 (D.S.C. May 2, 2012). Perfection intends to protect a secured creditor from third parties without knowledge, but an otherwise unperfected security interest is still valid as between the parties as long as it has attached. *Id.*

In response, Nixon does not focus on the fact that ArborOne obtained a security interest in the Section 1603 Program funds by virtue of the Security Agreement; instead Nixon argues that ArborOne has not presented sufficient documents to show there was a valid assignment of the grant money. [ECF #117, p. 2]. Nixon thus appears to dispute that ArborOne has a valid security interest by stating that in its brief in opposition that there is a question of fact as to whether GES voluntarily and properly assigned the grant money to ArborOne because there are no assignment documents. [ECF #117, p. 7]. As its evidentiary support, Nixon attaches to its brief what appears to be a computer printout of a document entitled "Assignments of Payments Made Under Section 1603 of Division B of the American Recovery and Reinvestment Act of 2009" which states that in order to comply with this stated rule or policy, an entity should file a Notice of Assignment. ArborOne refutes the authenticity of this document, but nevertheless points out that any alleged noncompliance with this rule does not affect the enforceability of its rights because under 41 U.S.C. § 6305(b) (the "Federal Assignment of Claims Act"), the provision referenced by Nixon is designed to protect the U.S. Government and does not affect the rights of or between private contracting parties. *In re Palmetto Pump & Irrigation, Inc.*, 81 B.R. 109, 112 (Bank. M.D. Fla. 1987) ("[T]he Assignment of Claims Act has no application to this case. There is no question that the Act . . .does not affect the rights of contracting parties.").

This Court's review of the Declaration of Richard Pitts, the Award Letter to GES, and the

Security Agreement included in the record [ECF #113, Ex. 2], provide sufficient evidence that there was a valid transfer from GES to ArborOne of a security interest in the federal grant money. Nixon does not provide any evidence to rebut this finding beyond mere allegations that there is not a Notice of Assignment in the record, a claim ArborOne successfully rebuts as irrelevant to whether the transfer was valid under these circumstances. As ArborOne notes, S.C. Code Ann. § 27-23-40 makes clear that conveyances made for good consideration shall not be made void by S.C. Code Ann. § 27-23-10. ArborOne has provided documents that suffice to show a valid transfer of a security interest in the grant funds from GES. Accordingly, this Court agrees with Defendant that the record reveals that the transfer was indeed made for good and valuable consideration. Thus, the question becomes one of intent, because a transfer for "valuable consideration" may still be set aside if there is actual intent to defraud a creditor. *Blackard*, 313 S.C. at 437-438.

ArborOne has shown a valid security interest in the Section 1603 Program proceeds from GES by virtue of the Security Agreement. *See generally CT& T EV Sales, Inc. v. 2AM Group, LLC*, No. 7:11-1532-TMC, 2012 WL 1576761, at *8 (D.S.C. May 2, 2012). The burden of proving fraud in this case thus rests on Nixon. *In re Ducate*, 355 B.R. 536, 544 (D.S.C. 2006). In its initial pleading, Nixon alleged that ArborOne intended to defraud Nixon, as a creditor of GES. In its response brief, Nixon states: "ArborOne, ACA knew that GES was insolvent and owed money to numerous creditors including the Defendant. Despite this knowledge, GES . . . and ArborOne diverted funds and assets which were, upon information and belief, intended for the cost of installing the bio gas facility, to themselves. Consequently, GES's intent to defraud

11

creditors is imputable to the recipients of the money and assets." [ECF #16]. Furthermore, in its briefing, Nixon asserts that by considering facts and circumstances surrounding this transfer, certain "badges of fraud" recognized by the South Carolina appellate courts appear, warranting an inference of fraud. [ECF #117]. These indicators of fraud include insolvency or indebtedneses of the transferor, lack of consideration for the conveyance, relationship between the transferor and transferee, pendency of litigation, secrecy or concealment, departure from a usual method of business, transfer of a debtor's entire estate, the reservation of benefit to the transferor, and the retention by the debtor of possession of the property. *Coleman v. Daniel*, 199 S.E.2d 74, 79, 261 S.C. 198 (S.C. 1983).

Nixon must come forward with some proof beyond speculation to support its argument that ArborOne intended to induce GES to fraudulently convey an interest in the grant funds. Simply stated, Nixon cannot meet this burden because it has not brought forth any evidence that, at the time ArborOne and GES entered into the Security Agreement, GES was insolvent. Additionally, On June 27, 2011, when ArborOne entered into the Security Agreement, Nixon had not filed its mechanic's lien. Importantly, Nixon does not dispute the validity or execution of the Security Agreement, the date upon which ArborOne received its secured interest in the Section 1603 Program grant money.

Nixon argues as its evidence of fraud the following: (1) GES was insolvent at the time the alleged assignment of the Section 1603 Program grant money occurred; (2) ArborOne used the grant money to satisfy the debt incurred by Mr. and Mrs. Collins, and that ArborOne had a close relationship with this couple; (3) ArborOne received the government funds after Nixon filed its

12

mechanic lien, i.e. with knowledge that a lawsuit was imminent; (4) the financing statement was filed (i.e. "perfected") after GES received notice of the award; and (5) ArborOne used the grant money to settle the lawsuit filed by Plaintiff in this case. [ECF #117, p. 7]. However, Nixon fails to provide any details or otherwise establish its fraud claim with any particularity. *See In re Derivium Capital, LLC*, 380 B.R. 429, 437-38 (D.S.C. 2006) (finding that the bankruptcy Trustee failed to meet the pleading standard with respect to fraud claims in Rule 9(b) because its allegations related to fraud were conclusory). Nixon's assertion that the debtor was insolvent when the money from the grant funds was transferred or assigned ignores the fact that ArborOne obtained a valid interest in the money prior to that time, on the date of the execution of the Security Agreement, which is the relevant time frame to consider.[5] As to Nixon's remaining "evidence" of fraud, these points are all premised on the incorrect assumption that the Security Agreement was not effective because it had not yet been perfected.

As pointed out by ArborOne, Nixon's allegations are not supported by facts or evidence in the record. While GES may have been insolvent at the time ArborOne perfected the interest, it has not been shown to be insolvent when the Security Agreement was executed. Nothing contained within the record before this Court suggests that ArborOne had a close relationship with Mr. and Mrs. Collins, other than Nixon's assertions that this is the case. Nixon does not further argue what is meant by "a close relationship" and this Court does not find any facts in the record to support this claim. Moreover, ArborOne provided an affidavit of Mr. Pitts, along with

---

[5] Indeed, this Court finds it difficult to believe that ArborOne would have loaned a little over $2 million dollars to Mr. and Mrs. Collins and GES or executed a Security Agreement with them had it known or had any indication that Mr. and Mrs Collins and/or GES was insolvent.

13

supporting documentation showing that Nixon actually received a disbursement in the amount of $692,811.10 from the loan evidenced by the ArborOne Note. [ECF #113-2, p. 5, Ex. 6]. Within their brief, Nixon notes that it "presumes" ArborOne used the grant money to settle the lawsuit with Plaintiff in order to maintain priority over Nixon's interest, without providing any facts to support this claim. [ECF #117, p. 7]. Nixon makes the argument that the date ArborOne filed its UCC-1 Financing Statement matters to its fraud claim. This Court is unclear how the date of the filing of the UCC-1 Statement after GES received notice of the award proves fraud on the part of ArborOne. Further, as noted by ArborOne, the issue of perfection is irrelevant to this issue because Nixon does not claim to have a security interest in the grant funds, perfected or not. Nixon also states in conclusory terms that the disbursement happened after Nixon filed its mechanic's lien and with the knowledge by ArborOne that a lawsuit was imminent. Nixon does not further explain how ArborOne knew that a lawsuit was imminent, beyond this Court's assumption that Nixon's argument is that because it filed a lien on public record, the knowledge of filing of a lien is imputed to ArborOne. However, this evidence, without any other factual support in the record, does not establish that ArborOne fraudulently induced GES to divert funds in its favor. Indeed, Nixon filed its mechanic's lien long after ArborOne had already entered into the Security Agreement with GES. Accordingly, because Nixon fails to establish a material issue of fact upon which this Court can rely with respect to the claim of fraudulent transfer, this Court grants summary judgment in favor of ArborOne as to this cross-claim.

### II. Nixon's Tortious Interference With Contract Claim

The elements for establishing a claim for tortious interference with contract are as follows:

(1) the existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages. *Camp v. Springs Mortgage Corp.*, 426 S.E.2d 304, 310 S.C. 514, 517 (S.C.1993). Nixon alleges that ArborOne tortiously interfered with its contract with GES, thereby resulting in damages. [ECF #16]. Specifically, Nixon pled that Nixon and GES entered into a contract for supplies, ArborOne had knowledge of this agreement, GES owed money to Nixon under the terms of the contract, and ArborOne "intentionally and wrongfully" diverted funds intended for the cost to cover the biogas facility to itself, thereby procuring a breach of GES's contract with Nixon. [ECF #16, pp. 7-8].

ArborOne first submits to this Court that Nixon has not properly pled a claim upon which relief can be granted. However, as this Court considered in its analysis of the previous claim, the record contains multiple pleadings and evidence, including documents and exhibits that are now before this Court such that this Court will consider this claim under the standard for a motion for summary judgment. Nonetheless, even under the less restrictive standard, this Court finds that the allegations within Nixon's cross-claim are sufficient to put ArborOne on notice of the cross-claim at issue.

In considering the elements of the tortious interference with contract cross-claim, the parties appear to be in dispute about whether ArborOne intentionally procured the breach and, if so, whether ArborOne was justified in so doing. In order to show a party intentionally procured a breach of a contract, one must show an "improper purpose" or the breach came as the result of employing "improper methods." *Eldeco, Inc., v. Charleston County School Dist.*, 642 S.E.2d 726, 732, 372 S.C. 470 (S.C. 2007). A defendant's exercise in good faith of a legal right by a party

15

to a contract does not create a basis for any action by a second party for intentional interference with a contract, despite the fact that the consequence of exercising its legal right causes the third party not to perform under the contract with a second party. *Webb v. Eldrod*, 418 S.E.2d 559, 561, 308 S.C. 445 (S.C. Ct. App. 1992). Courts have held in similar contexts, when proving intentional interference with prospective contractual relations, a plaintiff must prove that a defendant intentionally interfered for an improper purpose or by improper methods. *Santoro v. Schulthess*, 681 S.E. 2d 897, 903, 384 S.C. 250 (S.C. Ct. App. 2009). If a defendant acts for more than one purpose, the improper purpose must dominate to establish liability. *Id.*

Nixon argues that ArborOne "knew" the grant money was intended for the biogas facility and seizing the money would prevent Nixon from receiving funds from GES. However, ArborOne disputes this point, and Nixon does not provide any factual support for the allegation that this was the intended purpose for the grant. As discussed previously in this Order, Nixon had yet to file its mechanic's lien at the time ArborOne and GES entered into the Security Agreement in 2011. Nixon also argues that the seizure of these funds was not supported by an actionable security interest. First, Nixon has failed to set forth material facts showing that the grant money was to be used in the manner as suggested above, and second, ArborOne has brought forth unrebutted evidence that it did, in fact, have an actionable security interest. While the UCC-1 financing statement was not filed until after the award of the grant money, ArborOne has provided the Security Agreement evidencing the grant of a security interest in these funds by GES.

Moreover, Nixon has failed to rebut ArborOne's argument that even if it did cause such

16

a breach, it was justified in receiving this grant money based on a proper business purpose.[6] Nixon relies upon *Commerce Funding Corp. v. Worldwide Security Services Corp.*, 249 F.3d 204 (4th Cir. 2001) to argue that like the lender in *Commerce*, a lender who mistakenly believes it has an interest in a government contract, did not actually possess a financial interest and therefore could not invoke the "business purpose defense." However, ArborOne has shown that it has an enforceable security interest, as defined by Section 9-203 of the Uniform Commercial Code, because (1) value was given in exchange; (2) the debtor in this case had rights to the collateral (grant funds); and (3) the debtor authenticated a security agreement describing the collateral. Thus, Nixon's argument to deny summary judgment because ArborOne was not protecting a valid interest when it seized the grant money is not supported by the facts of this case. Indeed, ArborOne has established it had a business reason for securing said funds, to satisfy, at least in part, the loans evidenced by the ArborOneNote. [ECF #120, p. 6]. Accordingly, this Court finds that no genuine issue of material facts exists to preclude granting summary judgment in favor of ArborOne on this ground.

Finally, with respect to Plaintiff's Joinder Motion, Plaintiff argues that the counterclaims brought by Nixon against Plaintiff are "identical" to the cross-claims brought by Nixon against ArborOne. [ECF #115, p. 2]. Plaintiff states that both claims are based upon Nixon's contention that it had some entitlement to the funds paid to Arbor One under the Section 1603 Program grant. Accordingly, should this Court grant summary judgment in favor of ArborOne on Nixon's

---

[6] Interference with a contract is justified when it is motivated by a legitimate business purpose. *Gaillard v. Fleet Mortg. Corp.*, 880 F. Supp. 1085, 1089 (D.S.C. 1995). For example, competition has been held to be proper justification for interference with a contract. *Id.*

cross-claims, then it requests this Court find in favor of Plaintiff on Nixon's counterclaims against Plaintiff, as well. Nixon did not file a responsive pleading or otherwise provide any argument to the Court as to why it should not grant Plaintiff's Joinder Motion. A review of the record by this Court reveals that summary judgment should be granted in Plaintiff's favor on the counterclaims for the same reasons discussed in this Motion.

## Conclusion

The Court has thoroughly reviewed the entire record, including all pleadings and exhibits filed in this case. For the reasons stated above, Defendant's motion for summary judgment [ECF #113] is **GRANTED.** Nixon Energy Solutions' Cross-Claims against ArborOne ACA in its Amended Answer [ECF #16] are dismissed with prejudice. Furthermore, this Court has considered Plaintiff's Motion for Joinder [ECF #115], and for the reasons stated above, Plaintiff's request for joinder and summary judgment in Plaintiff's favor on Nixon's counterclaims is **GRANTED**. The counterclaims brought by Nixon in its Amended Answer [ECF #16] are dismissed with prejudice.

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
May 8, 2017  R. Bryan Harwell
United States District Judge